UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
──────────────────────────────────────X

Saul Zipper,

      *Plaintiff*,

  v.                                         **MEMORANDUM & ORDER**
                                                      **03-CV-5796 (NGG)(VVP)**

Alan M. Nichtern and Barton Limousine Corp.,

      *Defendants /*
      *Third-Party Plaintiffs*,

  v.

Healthsouth,

      *Third-Party Defendant /*
      *Fourth-Party Plaintiff*,

  v.

Fitter International, Inc. d/b/a Fitter First,

      *Fourth-Party Defendant*.
──────────────────────────────────────X

GARAUFIS, United States District Judge:

      Before the court is a motion to dismiss filed by Fourth-Party Defendant Fitter International, Inc. d/b/a Fitter First ("Fitter" or "Fourth-Party Defendant"). That motion is based on the theories of insufficient service of process, lack of personal jurisdiction, and *forum non conveniens*. In the alternative, Fitter moves the court to sever the action against it from all other actions. For the reasons set forth below, the motion to dismiss is GRANTED on the ground of lack of personal jurisdiction. The motion for severance is therefore moot.

1

I.  Background

Saul Zipper ("Zipper" or "Plaintiff") alleges that Alan M. Nichtern ("Nichtern"), while acting within the scope of his employment by Barton Limousine Corp. ("Barton"), operated a car that collided with Zipper's car, thereby injuring Zipper.  Zipper sued Nichtern and Barton (together, "Defendants") for this injury, alleging that they "were negligent, reckless and careless in the ownership, maintenance, operation, and control of their motor vehicle."  (Am. Compl. ¶ 17.)

When Defendants deposed Zipper, he testified that his left knee, which he apparently (although the briefs do not make this clear) claimed to have injured in the accident with Nichtern, was later re-injured during physical therapy when he used an exercise device known as a "Versa Fitter Pro."  After hearing Zipper's testimony, Nichtern and Barton filed a third-party complaint against Zipper's physical therapist, Healthsouth ("Healthsouth" or "Third-Party Defendant"), alleging that Healthsouth negligently caused the injury to Zipper's left knee.  Healthsouth then filed a complaint of its own against Fitter, which manufactured the Versa Fitter Pro.[1]

II.  Analysis

　A.  Fitter's Motion to Dismiss

Fitter moves to dismiss Healthsouth's Fourth-Party Complaint pursuant to Fed. R. Civ. P. 12(b)(5) for insufficient service of process, pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction, and pursuant to Fed. R. Civ. P. 12(b)(3) under the doctrine of *forum non*

---

[1] Healthsouth also sued Tim G. Brister and Brister Innovations, LLC (who together designed the Versa Fitter Pro), Lenso, Inc. (which manufactured the Versa Fitter Pro), and M-F Athletic Company, Inc. d/b/a Perform Better (which apparently, although the briefs do not make this clear, distributed the Versa Fitter Pro).  Healthsouth dismissed its actions against these parties in a stipulation so ordered by the court on June 20, 2006.

*conveniens*. I consider the first two theories in turn. Because I grant the motion on the ground of lack of personal jurisdiction, I do not address the issue of *forum non conveniens*.

   1. **Insufficient Service of Process**

The parties agree that Fitter is a Canadian Corporation. (See Am. Fourth-Party Compl. ¶¶ 1-4; Fitter Moving Br. at 2.) Fitter asserts, and Healthsouth does not dispute, that Fitter's principal place of business is in Calgary, Alberta, Canada. (Fitter Moving Br. at 2.) HealthSouth initiated its action against Fitter via personal service upon Margaret Stack ("Stack"), a Controller for Fitter in Calgary. (See Affidavit of Service signed by Larry Robson, dated Nov. 4, 2005.)

Fitter argues that such service was insufficient under the Federal Rules of Civil Procedure and the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Hague Convention"), November 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163. (Fitter Moving Br. at 2.) According to Fitter, the only proper manner for HealthSouth to serve Fitter was via one of two "Central Authorities" designated under the Hague Convention: the United Nations Criminal and Treaty Division in Ottawa and the Civil Enforcement Agency of the Sheriff of Alberta. (Id. at 3.) Because HealthSouth did not avail itself of either Central Authority, Fitter argues, this court lacks jurisdiction over HealthSouth's action. (Id.)

This court's analysis begins with the Federal Rules of Civil Procedure.[2] According to Rule 4(h)(2), "service upon a . . . foreign corporation . . . shall be effected . . . in a place not within any judicial district of the United States in any manner prescribed for individuals by

---

   [2] Although the parties do not dispute the facts regarding HealthSouth's manner of service (as opposed to the law governing that service) the court notes that "when a defendant moves to dismiss under Rule 12(b)(5), the plaintiff bears the burden of proving adequate service." Burda Media, Inc. v. Viertel, 417 F.3d 292, 298 (2d Cir. 2005).

3

subdivision (f) except personal delivery as provided in paragraph 2(C)(i) thereof." Rule 4(f), in turn, provides that service may be effected outside the United States "by any internationally agreed means reasonably calculated to give notice, such as those means authorized by the Hague Convention[.]" Fed. R. Civ. P. 4(f)(1).

The United States and Canada are both contracting parties to the Hague Convention. This court must therefore consider what methods of service are appropriate under that treaty. If personal service upon Fitter's Controller is among the "means authorized by the Hague Convention," Fed. R. Civ. P. 4(f)(1), then Fitter's motion to dismiss must be rejected to the extent that it relies on HealthSouth's manner of serving process.

The Second Circuit has observed, and this court acknowledges, that "[t]he Hague Convention provides for several alternate methods of service: (1) service through the Central Authority of member states; (2) service through consular channels; (3) service by mail if the receiving state does not object; and (4) service pursuant to the internal laws of the state." See Burda, 417 F.3d at 300 (citing Hague Convention Arts. 5, 6, 8, 9 & 10); see also Hague Convention, Art. 19 ("To the extent that the internal law of a contracting State permits methods of transmission, other than those provided for in the preceding articles, of documents coming from abroad, for service within its territory, the present Convention shall not affect such provisions."). HealthSouth does not argue that it employed the first, second, or third of these methods, and the court finds that it did not. The court must therefore consider whether personal service upon Stack, Fitter's Controller, constitutes "service pursuant to the internal laws of" Canada or Alberta.

4

Alberta's Rules of Court provide that "[a] document by which an action or other proceeding is commenced shall be served personally." Alberta Reg. 390/68, Alberta Rules of Court § 14. The question, then, is whether personal service upon Stack constitutes personal service upon Fitter. It does:

> Personal service is effected on a corporation . . . by leaving a true copy of the document to be served with . . . the manager, office manager, cashier, secretary, agent, attorney, councillor, alderman, director, vice-president, executive vice-president, treasurer, secretary-treasurer, branch manager, assistant manager, *comptroller*, governor, principal, superintendent or commander, as the case may be, of the corporation.

Alberta Reg. 390/68, Alberta Rules of Court § 15(2)(b)(ii) (emphasis added).

Because personal service upon Stack constitutes personal service upon Fitter, thereby satisfying Alberta's Rules of Court, which are incorporated by reference into the Hague Convention, HealthSouth's manner of service was permissible under Rule 4 of the Federal Rules of Civil Procedure. In addition, the court notes that service on a foreign corporation may be affected by, in addition to the means set forth on Rule 4(f)(1) and (2), "by other means not prohibited by international agreement as may be directed by the court." Fed. R. Civ. P. 4(f)(3). Because personal service is not prohibited by the Hague Convention, and because it has resulted in actual notice, the court directs that for the purpose of serving Fitter with a summons and complaint in this case, as well as any amended complaints, HealthSouth may effect personal service upon Fitter by serving Fitter's Controller or any other officer of Fitter identified in Alberta Rules of Court § 15(2)(b)(ii). Fitter's motion to dismiss is therefore denied to the extent that it is based upon an argument that service was improper.

## 2. Lack of Personal Jurisdiction

In the Second Circuit, the procedure for resolving a challenge to personal jurisdiction is as follows:

> When responding to a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant. . . . [The court must] construe the pleadings and affidavits in the light most favorable to [the plaintiff], resolving all doubts in [the plaintiff's] favor. In diversity cases arising in this Circuit, personal jurisdiction is determined by the law of the state in which the district court sits, which in this case is New York.

DiStefano v. Carozzi North America, Inc., 286 F.3d 81, 84 (2d Cir. 2001) (quotation marks and citation omitted). Because this motion was made after jurisdictional discovery but without an evidentiary hearing (see Order dated February 16, 2006), HealthSouth must make a prima facie showing that jurisdiction exists. Hoffritz for Cutlery, Inc. v. Amajac, Ltd., 763 F.2d 55, 57 (2d Cir.1985); Jacobs v. Felix Bloch Erben Verlag fur Buhne Film und Funk KG, 160 F. Supp. 2d 722, 731 (S.D.N.Y. 2001). This court must construe all of the pleadings and affidavits in the light most favorable to HealthSouth and must resolve doubts in HealthSouth's favor. Hoffritz, 763 F.2d at 57.

HealthSouth argues that this court may exercise personal jurisdiction over Fitter pursuant to New York's statute of general jurisdiction, N.Y. C.P.L.R. § 301.[3] This court may exercise general jurisdiction over a foreign corporation pursuant to Section 301 if the corporation was "doing business" in New York, Laufer v. Ostrow, 434 N.E.2d 692, 696 (N.Y. 1982), during the period in which the lawsuit was filed (rather than when the claim arose), which in this case was

---

[3] HealthSouth does not argue for personal jurisdiction pursuant to New York's "long arm" statute, N.Y. C.P.L.R. § 302. (HealthSouth Br. at 6-15.)

2005, Yurman Designs, Inc. v. A.R. Morris Jewelers, L.L.C., 41 F. Supp. 2d 453, 457 (S.D.N.Y. 1999); William Systems, Ltd. v. Total Freight Systems, Inc., 27 F. Supp. 2d 386, 388 (E.D.N.Y. 1998). If this court has general jurisdiction over a foreign corporation, then that corporation may be dragged into the court for matters wholly unrelated to its activity in New York. Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 198 (2d Cir.1990).

In considering jurisdiction under the "pragmatic" doing-business standard, "New York courts have generally focused on the following indicia of jurisdiction: [1] the existence of an office in New York; [2] the solicitation of business in New York; [3] the presence of bank accounts or other property in New York; and [4] the presence of employees or agents in New York." Landoil Resources Corp. v. Alexander & Alexander Services, Inc., 918 F.2d 1039, 1043 (2d Cir. 1990) (quotation marks and citations omitted; bracketed numbers added). HealthSouth concedes that during the relevant period, Fitter did not have an office, bank account, other property, employees, or other agents in New York, and that the first, third, and fourth factors therefore suggest that the court lacks personal jurisdiction over Fitter. (HealthSouth Br. at 7.)

HealthSouth argues, however, that Fitter engaged in "substantial and continuous solicitation," thereby subjecting itself to jurisdiction under Section 301. (Id. at 4-14.) The Second Circuit has explained that–

> [T]he solicitation of business alone will not justify a finding of corporate presence in New York with respect to a foreign manufacturer or purveyor of services. On the other hand, if the solicitation is substantial and continuous, and defendant engages in other activities of substance in the state, then personal jurisdiction may properly be found to exist. Under this "solicitation-plus" rule, once solicitation is

7

> found in any substantial degree very little more is necessary to a conclusion of "doing business."

Landoil, 918 F.2d at 1043-44 (quotation marks and citations omitted). The court must therefore determine (1) whether Fitter has indeed engaged in "substantial and continuous" solicitation of business in New York and, if so, (2) whether Fitter engaged in "other activities of substance" in New York. Fitter has done neither.

### a. Substantial and Continuous Solicitation

In support of its argument that Fitter is subject to personal jurisdiction under the "solicitation plus" test, HealthSouth cites the following facts about Fitter, all of which were true in 2005 unless otherwise indicated:

- Fitter directly sold products worth $106,359.77 to consumers in New York, representing 1.92% of its total sales for that year;

- Fitter also sold products through distributors that advertise in New York, including 43 distributors who sell and advertise Fitter products via websites;

- Fitter distributed 3,130 catalogs to potential customers in New York;

- Fitter licenses at least thirteen stores in New York to sell its products;

- Fitter sells products to customers in New York via its website;

- Fitter sells products to customers in New York via its toll-free telephone number;

- Fitter advertised in at least two magazines that were circulated in New York;

8

- Fitter purchased products worth at least $1,182.00 from vendors in New York; and

- In 2000, Fitter's President, Louis Stack ("Stack"), appeared at a trade show in New York.

(HealthSouth Br. at 7-13.) The court must first determine whether these facts, which for the purpose of resolving the present motion the court assumes to be true, together constitute "substantial and continuous" solicitation. They do not.

As a preliminary matter, the court notes that it may not consider the acts of entities other than Fitter and agents of Fitter in determining the scope of Fitter's solicitation in New York. It is true that "[i]n certain circumstances, jurisdiction has been predicated upon activities performed in New York for a foreign corporation by an agent." Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 95 (2d Cir. 2000) (citations omitted). But because an agent, in order for his activities to give rise to jurisdiction, "must be primarily employed by the defendant and not engaged in similar services for other clients," id., and because HealthSouth has not alleged, much less offered evidence, that the distributors and stores it cites satisfy this criterion, the court cannot consider the conduct of those distributors and stores when determining whether Fitter engaged in substantial and continuous solicitation. "[S]ales, no matter how substantial, of a foreign manufacturer's product in New York through an independent agency do not make the foreigner amenable to suit in New York, even though the products are advertised in local media." McShan v. Omega Louis Brandt et Frere, S.A., 536 F.2d 516, 517-18 (2d Cir.1976).

The court will also not consider Stack's appearance at a trade show in 2000. In considering whether Fitter was "doing business" in New York, the court must focus on the period in which the lawsuit was filed, which in this case was 2005. Yurman Designs, 41 F. Supp. 2d at 457; William Systems, 27 F. Supp. 2d at 388. HealthSouth argues that case law does not compel

9

this court to focus on a one-year period. In support, it cites only one case, Jacobs v. Felix Bloch Erben Verlag fur Buhne Film und Funk KG, 160 F. Supp. 2d 722 (S.D.N.Y. 2001). But the court deciding Jacobs agreed with this court that "[f]or the purposes of the jurisdictional analysis under New York State law, the Court focuses specifically on the Defendants' amenability to suit at the time the lawsuit was filed, not when the claim arose (and not based on subsequent changes in their status)." Id. at 726 n.5. The Jacobs court therefore considered only a very brief period of time surrounding September 18, 1998, the date litigation commenced, in deciding whether defendants were subject to general personal jurisdiction. See, e.g., id. at 726 ("As of September 1998 . . . Defendant Michael Brenner owned 26% of the shares of Brenner Holding and BB Promotion and his wife held the other 74% of those companies.").

HealthSouth argues that the Jacobs court "considered an entire four year period of 1992 through 1995 that defendants were visiting New York as relevant to jurisdiction for the purposes of CPLR § 301." (HealthSouth Br. at 12 (citing Jacobs at 726).) But the Jacobs court found that the defendants were not "doing business" in New York, and noted in particular that the "solicitation plus" test that HealthSouth urges this court to apply failed. Jacobs at 731-34. For that reason, Jacobs cannot have held that personal jurisdiction under the Section 301 "solicitation plus" test can be premised on activity occurring in a multi-year period preceding the commencement of litigation gives rise to personal jurisdiction. If this court is to apply Jacobs at all, it is for the proposition that such activity *does not* permit an inference of "doing business" during the period when litigation commenced.

What is left, then, are Fitter's direct sales to customers in New York, its advertisements – most notably its website – and purchases of products from New York. I consider each in turn and in combination with each other.

### i. Direct Sales to Customers in New York

When determining whether solicitation is substantial, courts often look to the percentage of a foreign corporation's revenue that is attributable to New York. Overseas Media, Inc. v. Skvortsov, 407 F. Supp. 2d 563, 569 (S.D.N.Y. 2006). During 2005, Fitter's sales to consumers in New York accounted for 1.92% of its total revenue. Other district courts in this Circuit have observed that a foreign corporation is usually not subject to general personal jurisdiction in New York if it derives less than 5% of its overall revenue from sales to customers in New York. Yanouskiy, 2006 WL 3050871, at *5; Schottenstein v. Schottenstein, No. 04 Civ. 5851 (SAS), 2004 WL 2534155, at *11 n.114 (S.D.N.Y. Nov. 8, 2004). This court concurs. The case law is replete with examples of courts finding that such corporations did not engage in "substantial and continuous solicitation" and are not subject to general jurisdiction. See, e.g., Yanouskiy, 2006 WL 3050871, *5-*6 (0.13%); Hutton v. Priddy's Auction Galleries, Inc., 275 F. Supp. 2d 428, 437 (S.D.N.Y. 2003) (3%); Stemcor USA, Inc. v. Sharon Tube Co., No. 00 Civ. 9186 (DLC), 2001 WL 492427, at *2 (S.D.N.Y. May 8, 2001) (1%); Hennigan v. Taser International, Inc., 00 Civ. 2981 (MBM), 2001 WL 185122, at *2 (S.D.N.Y. Feb. 26, 2001) (3%); Pieczenik v. Dyax Corp., 00 Civ. 243 (HB), 2000 WL 959753, at *3 (S.D.N.Y. July 11, 2000) (1.3% of world-wide sales and 1.9% of domestic sales); Bank of Taiwan v. Ulti-Med Int'l, Inc., No. 95 Civ. 5657 (JFK), 1996 WL 502411, at *2 (S.D.N.Y. Sept. 4, 1996) (2.8%); Pellegrino v. Stratton Corp., No. 87 Civ. 549, 1989 WL 10726, at *4 (N.D.N.Y. Feb. 9, 1989) (1%); C.E. Jamieson & Co.,

Ltd v. Willow Labs, Inc., 585 F. Supp. 1410, 1411 (S.D.N.Y. 1984) (5%); Bush v. Stern Brothers & Co., 524 F. Supp. 12, 15 (S.D.N.Y. 1981) (1%).

### ii. Advertising

I next consider Fitter's advertising in New York, which consists in substantial part of its website. The mere existence of a website accessible within New York is insufficient to establish general jurisdiction over a defendant here. See, e.g., Yanouskiy v. Eldorado Logistices Systems, Inc., No. 05 Civ. 2202 (ENV), 2006 WL 3050871, at *3 (E.D.N.Y. Oct. 20, 2006); Reers v. Deutsche Bahn AG, 320 F. Supp. 2d 140, 155 (S.D.N.Y. 2004); In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000, 230 F. Supp. 2d 376, 383 (S.D.N.Y. 2002); Rodriguez v. Circus Circus Casinos, Inc., No. 00 Civ. 6559 (GEL), 2001 WL 21244, at *2 (S.D.N.Y. Jan. 9, 2001); Drucker Cornell v. Assicurazioni Generali S.p.A., Nos. 97 Civ. 2262 (MBM), 98 Civ. 9186 (MBM), 2000 WL 284222, *1 (S.D.N.Y. Mar. 16, 2000). Fitter's website therefore cannot, on its own, give rise to personal jurisdiction.

### iii. Purchases in New York

The purchases cited by HealthSouth are unavailing. Purchases in New York that permit the purchaser to "do business" elsewhere – in this case, Canada – do not constitute "doing business" in New York. Jacobs, 160 F. Supp. 2d at 732; Mantello v. Hall, 947 F. Supp. 92, 98 (S.D.N.Y. 1996)[4]; Agency Rent A Car System, Inc. v. Grand Rent A Car Corp., 916 F. Supp. 224, 228 (E.D.N.Y.), *rev'd on other grounds*, 98 F.3d 25 (2d Cir.1996) ("[T]he purchase of

---

[4] Judge Mukasey withdrew this opinion based on subsequently discovered facts. See Mantello v. Hall, No. 98 Civ. 4871, slip op. (S.D.N.Y. Mar. 1, 1999). That development does not disturb the sound reasoning of the cited opinion. Jacobs at 732 n.10.

goods from New York by a Defendant, even if on a large scale, would not, in and of itself, amount to 'doing business' within the state.").

### iv. Combination of the Above

The court must consider whether the combination of the above-described activities gives rise to personal jurisdiction. Because Fitter's purchases in New York are not relevant to personal jurisdiction, those purchases are not part of the combination. The court finds that the combination of Fitter's sales to customers in New York and Fitter's advertising in New York, including through its website, does not constitute "doing business" for the purpose of Section 301. See Hutton, 275 F. Supp. 2d at 437-38 (no personal jurisdiction over defendants who earned 3% of their revenue in New York, operated a website accessible there, and advertised in a trade publication directed to a national audience).

### b. Other Activities of Substance

In determining whether "other activities of substance" exist, "courts tend to focus on a physical corporate presence such as solicitation from a permanent locale within the state, but temporary visits by employees based out of state may also qualify." Big Apple Pyrotechnics, 2007 WL 747807, at *2 (quotation marks and citations omitted). As noted above, HealthSouth concedes that Fitter lacks a physical corporate presence in New York. Furthermore, the only visit to New York cited by HealthSouth occurred in 2000, five years before HealthSouth filed its Fourth-Party Complaint against Fitter. This court therefore finds that even if Fitter engaged in "substantial and continuous" solicitation in New York – which the court finds Fitter did not do – Fitter has not engaged in "other activities of substance," such that HealthSouth cannot satisfy the "solicitation plus" test.

B. *Forum Non Conveniens* and Severance

Because the court finds that it lacks personal jurisdiction over Fitter, and therefore dismisses HealthSouth's Fourth-Party Complaint against Fitter, it is not necessary for the court to consider Fitter's *forum non conveniens* argument. See Jacobs, 160 F. Supp. 2d at 741. The motion for severance is rendered moot.

III. **Conclusion**

For the reasons set forth above, Fitter's motion to dismiss the Fourth-Party Complaint filed by HealthSouth against Fitter is GRANTED.


SO ORDERED.

Dated: March 30, 2007                               /s/ Nicholas G. Garaufis
      Brooklyn, N.Y.                                 NICHOLAS G. GARAUFIS
                                                     United States District Judge